**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **RICKY L. AKERS,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 1:04-CV-0159-C |
| § | |
| **JO ANNE B. BARNHART,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed June 3, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on September 21, 2004, and Defendant filed her brief on October 18, 2004. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

**I.   STATEMENT OF THE CASE**

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on September 13, 2001, alleging disability beginning

August 10, 1989. Tr. 11, 87-89. His SSI application had a protective filing date of September 4, 2001. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff filed a Request for Hearing by Administrative Law Judge on November 13, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on October 6, 2003. Tr. 11, 24, 26-60. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 30-55. Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 11, 55-59. At the hearing, Plaintiff requested that his alleged onset date be amended to August 24, 2001. Tr. 11. The ALJ issued a decision unfavorable to Plaintiff on December 23, 2003. Tr. 8-19.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on August 24, 2001, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since August 24, 2001. Tr. 12. He found that Plaintiff had "severe" impairments, including insulin-dependent diabetes mellitus, diabetic peripheral neuropathy in his feet, coronary artery disease status post angioplasty and stenting of two vessels, degenerative disc disease in his cervical and lumbar spines, major depressive disorder, severe, with psychosis, and alcohol abuse, and that he is status post open reduction and internal fixation of his left tibia and status post arthroscopy of his left elbow. *Id.* He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy. Tr. 13-19.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 15.

The ALJ found that Plaintiff could not return to his past relevant work at the livestock auction and as a home health aide. Tr. 15, 18. He noted that Plaintiff was considered a "younger individual" with a high school education. Tr. 18; *see* 20 C.F.R. §§ 404.1563, 416.963.

The ALJ found that Plaintiff retained the RFC to obtain, perform, and maintain a limited range of light work. Tr. 17. The limitations include the need to avoid climbing ladders or scaffolds, the need to avoid exposure to hazards, and the need to avoid more than superficial contact with the public. Tr. 18. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 18-19. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of document shredder, with 4,200 jobs in the state and 111,000 nationally; sandwich maker, with 2,900 jobs in the state and 98,000 jobs nationally; and small products assembler, with 5,400 jobs in the state and 193,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 19.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 20, 2004. Tr. 17. The Appeals Council issued its opinion on April 2, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 4-6. The ALJ's decision, therefore, became the final decision of the Commissioner.

On June 3, 2004, Plaintiff commenced this action seeking judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 18-19.

### III.  DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to consider the limitations imposed by Plaintiff's impairments. Plaintiff further claims that the ALJ erred by failing to assess the Plaintiff's ability to maintain employment in light of his physical and mental impairments.

**A.    Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff argues that the ALJ's determination that Plaintiff could perform a limited range of work at the light exertional level was not supported by substantial evidence. Plaintiff argues that the ALJ failed to consider all of the limitations imposed by his impairments in making his RFC finding.

The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff alleges that the ALJ failed to consider the limitations imposed by Plaintiff's peripheral neuropathy and previous left leg injury and incorporate such limitations into his hypothetical questions. Plaintiff further alleges that the ALJ failed to consider Plaintiff's vision problems. He also argues that the ALJ should have included in his hypothetical a limitation of moderate to marked restriction on the ability to complete a normal workday and workweek without interruptions or excessive rest periods.

In his opinion the ALJ found that Plaintiff's severe combination of impairments included his insulin-dependent diabetes mellitus, diabetic peripheral neuropathy of the feet, degenerative disc

disease in his cervical and lumbar spines, coronary artery disease, severe major depressive disorder with psychosis and alcohol abuse and status post open reduction and internal fixation of his left tibia, and status post arthroscopy of his left elbow. Tr. 12. He noted that secondary to his intermittently controlled diabetes, Plaintiff developed peripheral neuropathy in both feet up to his ankles. *Id.* He also noted that Plaintiff has stated that his symptoms are not so significant as to warrant medication. *Id.* This is reflected in the record. Tr. 264.

As noted by the ALJ, a progress note from one of Plaintiff's treatment providers indicated that in 1998 Plaintiff reported that he was working very hard and had walked 10 miles with no discomfort. Tr. 205. Care providers at the Big Spring State Hospital noted that Plaintiff indicated that although his feet were numb from the ankle down with occasional burning sensations, he did not need medication at that time. Tr. 253, 337. It was also noted that Plaintiff's gait was normal. Tr. 269, 342. Dr. David M. Stark, who examined Plaintiff with regard to a workers' compensation injury to the left elbow, released Plaintiff to light duty work, with no heavy lifting over about 20 pounds. Tr. 476.

Dr. S.R. Boya, the internal medicine consultative examiner ("CE"), indicated upon examination a sensory deficit of 2+ over 4+ in both of the feet up to the ankles, with feeble pedal pulses. Tr. 235. He noted Plaintiff's report of sitting and standing for up to ½ an hour at a time, walking three to four blocks before becoming short of breath, and being able to lift, carry, and handle objects of about 30 pounds. Tr. 238. Dr. Boya also indicated that Plaintiff reported no chest pain at that time. *Id.* He indicated that Plaintiff's gait was normal and noted no persistent disorganization of motor function. *Id.*

Plaintiff testified that because of his heart problems, he can walk half a block before he gets short of breath. Tr. 46. He testified that he takes shots for his diabetes. *Id.* He testified that he experiences numbness in his feet. Tr. 47.

The ALJ noted Plaintiff's work history in his opinion, including his work in the oilfield for two weeks in November 2001 before he developed an ulcer on his leg. Tr. 16. He noted Plaintiff's past work at a livestock auction and as a home health aide. Tr. 15. He noted the inconsistencies in the record, wherein Plaintiff was noted to have and not have a limp. He noted the records indicating that Plaintiff's gait was normal and his statements that his peripheral neuropathy did not require medication. Tr. 12-13. The ALJ also noted the indication in the medical record that Plaintiff was able to walk ten miles with no problems. Tr. 17. After weighing this evidence, the ALJ concluded that Plaintiff could perform a restricted range of light work. Plaintiff argues that his peripheral neuropathy and previous leg and knee injuries limited his ability to perform the standing required of light work.

The ALJ did not accept Plaintiff's allegations of being unable to walk. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The record demonstrates that the ALJ considered and discussed Plaintiff's subjective allegations and testimony, as well as the opinions, findings, and notes of the various treatment providers. The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment and into his hypothetical questions that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). I find that the ALJ did not err in finding that Plaintiff could perform the exertional requirements of a limited range of light work.

Plaintiff further alleges that the ALJ failed to consider and incorporate limitations imposed by his mental impairments into the RFC finding and into the questions posed to the VE. The ALJ noted that Plaintiff had a history of depression which increased after his wife's death. Tr. 13. He noted that Plaintiff was treated twice at the Big Spring State Hospital in 2002. *Id*. He also noted

that the consultative psychiatric examiner, Dr. G. Alan Trimble, indicated that Plaintiff reported that he was able to live independently, handle his own finances, cook, vacuum, and perform household chores that did not involve heavy lifting, reaching, or bending. Tr. 13-14. The ALJ noted that Dr. Trimble opined that Plaintiff's concentration, persistence, and pace "were adequate." Tr. 14. He also noted Dr. Trimble's opinion that Plaintiff's ability to cook, shop, and perform household chores was diminished due to lack of motivation and auditory hallucinations. *Id.*

Plaintiff testified that he sought mental health treatment in 2002 after he attempted suicide. Tr. 42. He testified that he has twice required in-patient treatment. *Id.* He testified that he hallucinates, hearing his wife talking to him, once or twice a month. Tr. 44. He testified that he gets anxious and has panic attacks, with chest pain, two or three times a week. Tr. 48-49. Plaintiff also testified that his doctor told him that as long as he stays on his medication, he can manage. Tr. 49. He testified that the main reason why he cannot work is that he cannot concentrate. He further testified that he was not taking his medicines through MHMR because he "didn't feel they was [sic] doing me any good," but, at the time of the hearing, he had been regularly taking his medicines for three or four months. Tr. 54-55.

Plaintiff's Axis I[1] diagnosis upon his discharge from the Big Spring State Hospital was major depressive disorder, recurrent episode, severe, with psychotic features. Tr. 43. Although his initial

---

[1]      The axial system of evaluation is used to facilitate comprehensive and systematic evaluation with attention to the various mental disorder; general medical conditions; psychosocial and environmental problems; and level of functioning. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 27. An Axis I diagnosis is used to report all clinical disorders except for personality disorders and mental retardation, which are reported on Axis II. *Id* sat 27-28.

Global Assessment of Functioning ("GAF")[2] score was 11,[3] his GAF at the time of discharge was noted to be 50. Tr. 245.

Dr. Trimble, who conducted a psychiatric consultative examination after Plaintiff's discharge from the Big Spring State Hospital, noted Plaintiff's report of dysphoric mood, decreased appetite, insomnia, difficulty concentrating, fatigue, and some suicidal ideation in the form of voices that he hears. Tr. 307. He observed that Plaintiff demonstrated no abnormalities in speech, mood was depressed, and affect was congruent, and he noted that there was no evidence of delusions, thought disturbances, or suicidal ideation except as was reported subjectively. Tr. 308. Dr. Trimble noted that Plaintiff was oriented to person, place, and time. *Id*. He noted Plaintiff's report of grocery shopping, reading magazines and watching television, church attendance every two weeks, and doing some household chores including washing dishes, vacuuming, cooking, and picking up. Tr. 309. Dr. Trimble's diagnosis was major depressive disorder with psychosis. *Id*. He opined that Plaintiff's current GAF was 50.[4] Tr. 310.

Upon completing a second psychiatric consultative examination on September 25, 2002, Dr. Trimble noted that Plaintiff's mood was slightly depressed, his affect was congruent, there were no thought disturbances except as reported subjectively, Plaintiff was oriented, judgment was intact,

---

[2] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32. This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[3] A GAF score of 11-20 indicates "some danger of hurting self or others" or occasional failure to maintain n minimal personal hygiene, or gross impairment in communication. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[4] A GAF score of 41-50 indicates "serious symptoms" such as suicidal ideation, or any "serious impairment in social, occupation, or school functioning," such as inability to keep a job or having no friends. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

and insight was fair. Tr. 382.  Dr. Trimble noted Plaintiff's report of cooking; eating three times a day; doing all household chores that did not involve heavy lifting, bending, or reaching; weekly church attendance; grocery shopping; riding the bus; reading; and watching television. Tr. 383. He again noted that Plaintiff's concentration, persistence, and pace were adequate during the examination. *Id*. He opined that Plaintiff's diagnosis was major depressive disorder, single episode, with psychosis, in partial remission. *Id*. He opined that Plaintiff's current GAF was 55.[5] *Id*.

MHMR notes indicate that Plaintiff was off his medication on October 24, 2002. Tr. 314. Plaintiff denied suicidal or homicidal ideation at that time, although he complained of a return of symptoms without his medication. Tr. 315. A progress note dated March 27, 2003, indicated that he was off medication since October 2002. Tr. 435. Plaintiff reported suicidal thoughts and hearing voices. *Id.* Poor compliance with medication was noted. Tr. 436. A progress note dated May 22, 2003, indicates no suicidal ideation. Tr. 464. The note indicated fair control of depression. Tr. 465.

Dr. John Morris completed a Mental Residual Functional Capacity Assessment Form and Physician's statement dated September 28, 2003. Tr. 470-73.  Dr. Morris indicated that Plaintiff's diagnosis was major depression with psychosis, although there was some question of schizoaffective disorder instead of major depressive disorder. Tr. 470. He indicated that Plaintiff's "disability is not permanent and is expected to last 6 months or less," noting that Plaintiff would need to be reviewed in six months. *Id*. Plaintiff supplied the court with a portion of the form completed by Dr. Morris which does not appear in the transcript of the administrative record. It indicates that Plaintiff was markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

---

[5] The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

unreasonable number and length of rest periods. Pl. Brief. Ex. A at 2. The state agency medical consultant opined that Plaintiff was moderately limited in this regard. Tr. 392.

The ALJ found that Plaintiff's mental impairments created mild deficiencies of concentration, persistence, or pace. Tr. 17. He specifically addressed Dr. Morris' assessments, presuming he was a treating psychiatrist. *Id.* He noted that these assessments were not consistent with the objective evidence in the record and did not afford these assessments controlling weight. *Id.* He noted Plaintiff's noncompliance with medication and Plaintiff's testimony that he had been taking his medication consistently for only four or five months. Tr. 16. The ALJ noted the reports of the psychiatric CE, who examined Plaintiff twice. He also noted that the records of Plaintiff's treatment providers at MHMR indicated that he was only mildly depressed as of May 2003. *Id.*

Plaintiff's representative was given the opportunity to examine the VE and did so, eliciting testimony that a person of Plaintiff's age, with his vocational history and RFC, with the added limitation of being moderately limited in the ability to perform activities with a schedule, markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and markedly limited in the ability to perform at a consistent pace with an unusual number and length of rest periods, would not be able to perform any jobs. Tr. 58-59. Plaintiff argues that the ALJ should have incorporated such limitations into the hypothetical questions posed to the VE.

However, the ALJ is not required to incorporate limitations into his RFC finding or the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.3d 333, 336 (5th Cir. 1988). The hypothetical questions presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994)(no reversible error where the hypothetical presented reasonably

incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).

The ALJ did not find that Plaintiff was moderately or markedly impaired in the ability to complete a normal workday or workweek because of his psychological symptoms. The ALJ determined that the opinion of Dr. Morris on this issue should not be given controlling weight.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. In determining that Dr. Morris' assessments should not be given controlling weight, the ALJ noted that they were not supported by the objective evidence in the record, including the records of the MHMR providers who noted that Plaintiff was only mildly depressed in May 2003. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse*, 925 F.2d at 790 (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). I find that the ALJ did not err in discounting Dr. Morris' assessments or in incorporating the limitations noted in his assessments into his RFC finding or into the hypothetical questions posed to the VE.

Plaintiff also argues that his poor vision "could obviously interfere with a person's ability to perform the jobs suggested by the vocational expert." Pl. Brief at 16. The ALJ noted in his

opinion that the CE indicated that Plaintiff's visual acuity was 20/40 in both eyes. Tr. 13. The hypothetical question posed to the VE included limitations that excluded the climbing of ladders and scaffolds and exposure to hazards, moving machinery, and unprotected heights. Tr. 56.

Dr. George Woodward of the Medical Care Mission indicated in a progress note dated December 6, 2002, that an eye examination of Plaintiff indicated vision of 20/30 in the left eye and 20/50 in the right eye with corrective lenses in place. Tr. 178. Dr. Brett Teague, who examined Plaintiff for the Texas Commission for the Blind, noted that Plaintiff's vision was 20/60 in the right eye and 20/50 in the left eye, and he opined that Plaintiff did not have a serious visual loss after correction. Tr. 387-88. Dr. Boya, the internal medicine CE, noted that Plaintiff's vision with correction was 20/40 in both eyes. Tr. 235. Care providers at the Big Spring State Hospital indicated that Plaintiff's vision with correction improved to 20/40. Tr. 240. The state agency medical consultants opined that Plaintiff had no visual limitations, noting his visual acuity. Tr. 412, 422. Plaintiff testified that he has gone "sort of blind," and his eyesight is damaged. Tr. 47. Plaintiff did not allege or testify that his vision interfered with his past work or otherwise limited his activities. He noted on various occasions that he reads, does puzzles, and watches television. Tr. 111, 309, 383. The ALJ is only required to incorporate limitations into his RFC finding and into the hypothetical questions posed to the VE that he finds supported by the record. The record contains no information indicating that Plaintiff's vision limited his ability to perform the jobs suggested by the VE, and Plaintiff's representative was given the opportunity to examine the VE if there were questions on that issue. The ALJ did not find that Plaintiff's RFC was limited by his vision. I find that the ALJ did not err in failing to incorporate a limitation based on Plaintiff's vision into the hypothetical presented to the VE. *Bowling*, 36 F.3d at 435-36.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris*, 864 F.3d at 336. The record

demonstrates that the ALJ properly incorporated those limitations that he accepted, including a restricted range of work at the light exertional level. The record further demonstrates that Plaintiff's representative had the opportunity to further examine the VE and to obtain testimony on other claimed restrictions. The ALJ did not err by failing to incorporate the accepted limitations into the hypothetical questions posed to the VE.

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. The ALJ incorporated the limitations that he accepted into the hypothetical questions posed to the VE. I find that the ALJ did not err in his determination of Plaintiff's RFC, and such determination is supported by substantial evidence.

**B.     Whether the ALJ erred by failing to determine whether Plaintiff could maintain employment.**

Plaintiff claims that the ALJ erred by failing to determine whether Plaintiff had the ability to maintain employment, pursuant to *Watson*, 288 F.3d at 218 and *Singletary v. Bowen*, 798 F. 2d 818, 822 (5th Cir. 1986). In *Singletary,* the Fifth Circuit noted that "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Singletary,* 798 F.2d at 822. The requirement for a finding of the ability to maintain employment is not restricted to instances where non-exertional impairments are present. *See Watson*, 288 F.3d at 217-18.

In *Watson*, the claimant had degenerative disk disease, which caused the loss of movement in his legs every few weeks and too much pain to work every few weeks. *Watson*, 288 F.3d. at 218. In *Wingo*, the ALJ found that the claimant retained the residual functional capacity to perform the full range of work at the sedentary level and applied the Medical-Vocational Guidelines to direct a finding of "not disabled." *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1998). The ALJ in *Wingo* did not consider medical evidence about several of the claimant's impairments, as well as evidence that she was often unable to leave her bed for days at a time. *Id*. Plaintiff argues that his poor work history demonstrates that, like the claimant in *Singletary*, he can only maintain employment for short periods due to the effects of his impairments. This case, however, may be distinguished from *Watson*, *Singletary,* and *Wingo*.

The medical record and Plaintiff's reports and testimony indicate that Plaintiff experienced depression with psychosis after his wife's death. The record further indicates that Plaintiff's symptoms and depression improve when he complies with treatment and medication. The evidence does not indicate that Plaintiff's condition waxes and wanes in its manifestation of disabling symptoms causing him to be unable to work. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The claimant in *Singletary* was noted to be an individual who had "been hospitalized repeatedly over a long period of time for psychiatric problems," who had transient psychotic episodes, and who led a choatic life. *See Singletary*, 798 F.2d at 823. Plaintiff was hospitalized twice, but his treatment providers noted improvement in his condition with medication and treatment. Moreover, the ALJ has accommodated a limitation on social functioning by incorporating into his RFC finding a limitation to work which avoids more than superficial contact with the public.

In the recent case of *Perez v. Barnhart*, the Fifth Circuit clarified that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain

employment in every case." *Perez v. Barnhart*, 415 F.3d.457, 465 (5th Cir. 2005)(comparing *Frank* with *Watson*). Rather, a finding of ability to maintain employment is only required in a "situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id*. The court noted that "without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Id*. The issue of maintaining employment was not raised by the facts in this case, and the ALJ's decision is supported by substantial evidence.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United

-17-

States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 30th day of August, 2005.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**